UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOLLAND HARDAWAY,

    Petitioner,

v.                                   CASE NO. 01-CV-70230-DT
                                      HONORABLE GEORGE CARAM STEEH

KENNY ROBINSON,

    Respondent.
_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

Petitioner Holland Hardaway has filed a Petition for the Writ of Habeas Corpus under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's murder conviction on four grounds. The Court has concluded from a review of the pleadings and the state court record that Petitioner's claims lack merit and do not warrant habeas relief. Accordingly, the habeas petition must be denied.

**I. Background**

Petitioner was charged in Wayne County, Michigan with open murder, assault with intent to commit murder, and possession of a firearm during the commission of, or attempt to commit, a felony (felony firearm). The charges arose from a shooting on Prairie Street in Detroit, Michigan on October 2, 1993. As explained in the habeas petition,

> [t]he deceased was Norman Spruiel, a Detroit police officer who was working undercover, attempting to arrest a suspected murderer. He and his partner, Clifton Counts, had stopped down the street from the body shop where Mr. Hardaway worked to compare notes. Mr. Hardaway, his cousin Wendell Hardaway, the shop owner, and Gregory McDonald, another employee, were closing the shop when two cars, driven by the two officers, drove slowly near the shop and then parked. Mr. Hardaway went home, retrieved a rifle, and returned

> to the shop. A volley of shots rang out, with Mr. Hardaw[a]y claiming the police
> fired first and Mr. Counts contending that Mr. Hardaway was the first to open
> fire.

Pet. for Writ of Habeas Corpus, Statement of Proceedings and Facts, at 1.

Officer Spruiel was shot during the incident, He died a few weeks later as a result of complications from two gunshot wounds. Officer Counts was not injured. He testified against Petitioner at trial. Petitioner's defense was that he did not know the officers were policemen and that he returned fire in defense of himself and his cousin.

On May 18, 1994, a jury in the former Recorder's Court for the City of Detroit acquitted Petitioner of the assault charge, but found him guilty of second-degree murder, MICH. COMP. LAWS § 750.317, and felony firearm, MICH. COMP. LAWS § 750.227b. The trial court sentenced Petitioner as a habitual offender to five years in prison for the felony firearm conviction and to a consecutive term of forty to eighty years in prison for the murder conviction.

On July 12, 1994, Petitioner filed a claim of appeal through counsel. The Michigan Court of Appeals dismissed the appeal on August 18, 1995, because Petitioner's attorney failed to file a timely appellate brief. *See People v. Hardaway*, No. 177099 (Mich. Ct. App. Aug. 18, 1995). Over nineteen months later, Petitioner filed a delayed application for leave to appeal through a different appellate attorney. The Michigan Court of Appeals dismissed the application because it was not filed within twelve months of the judgment of sentence, as required by the Michigan Court Rules. *See People v. Hardaway*, No. 202045 (Mich. Ct. App. Sept. 25, 1997). Petitioner appealed the court of appeals decision to the Michigan Supreme Court, which denied leave to appeal because it was "not persuaded that the questions presented should be reviewed . . . ." *People v. Hardaway*, No. 110824 (Mich. Sup. Ct. Sept. 29, 1998). The state supreme court went on to say that Petitioner could file a motion for relief from judgment and argue that his first

appellate attorney's neglect of the appeal of right established the required "good cause" for failing to raise his issues in the appeal of right.

Petitioner then filed a motion for relief from judgment in the trial court. On August 4, 1999, the trial court denied the motion in a reasoned opinion. Petitioner appealed the trial court's decision without success. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented," *People v. Hardaway*, No. 222000 (Mich. Ct. App. March 30, 2000), and on December 12, 2000, the Michigan Supreme Court likewise denied leave to appeal. *See People v. Hardaway*, No. 116903 (Mich. Sup. Ct. Dec. 12, 2000).[1]

Petitioner filed his habeas corpus petition through counsel on January 17, 2001. The Court dismissed the habeas petition on the ground that it was barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d). *See* Doc. 30, Mar. 8, 2002. The United States Court of Appeals for the Sixth Circuit declined to grant a certificate of appealability, *see Hardaway v. Robinson*, No. 02-1415 (6th Cir. Oct. 7, 2002) (unpublished), and the United States Supreme Court denied Petitioner's application for a writ of certiorari. *See Hardaway v. Robinson,* 538 U.S. 926 (2003).

In 2004, Petitioner attempted to vacate this Court's judgment. He argued that the Court erred when it concluded in its opinion and order dismissing the habeas petition that he filed a claim of appeal on or about July 12, 1994. He maintained that he filed the claim of appeal in June of 1994 and, therefore, the one-year limitations period expired later than the date calculated by the Court, and his habeas petition was not barred by the statute of limitations. Because the Court was unable to reach a conclusion regarding the operative date of the claim of appeal, the

---

[1] Justice Marilyn Kelly voted to grant leave to appeal.

Court reinstated the habeas petition, and requested a responsive pleading from the State. *See* Doc. 46, Mar. 11, 2005, and Doc. 53, Mar. 23, 2006. Respondent has filed an answer to the habeas petition, and Petitioner has filed a reply.

## II. Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. Section "2254(d) dictates a

4

highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted).

## III. Discussion

### A. The Jury Instructions

The first habeas claim challenges the jury instruction that the trial court read when the jurors were unable to reach a decision. Among other things, the trial court said, "You will deliberate for as long as necessary for you to reach agreement." Petitioner alleges that the trial court's supplemental instruction departed from the standard instruction approved by the Michigan Supreme Court in *People v. Sullivan*, 392 Mich. 324 (1974). He also alleges that the instruction was coercive and eliminated the jury's right not to reach a unanimous decision.

The trial court reviewed this claim on the merits and stated that it had merely stressed the jury's need to seriously engage in deliberations. The trial court concluded that the overall effect of its comment was not coercive.

#### 1. Legal Framework

The leading Supreme Court case on instructions for deadlocked juries is *Allen v. United States*, 164 U.S. 492 (1896). In *Allen*, the Supreme Court approved a jury instruction which stated that

> in a large proportion of cases absolute certainty could not be expected; that, although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which

made no impression upon the minds of so many men, equally honest, equally
intelligent with himself. If, on the other hand, the majority were for acquittal, the
minority ought to ask themselves whether they might not reasonably doubt the
correctness of a judgment which was not concurred in by the majority.

*Id.* at 501. When adjudicating a court's comment to a deadlocked jury, a reviewing court must determine "whether in its context and under all the circumstances of this case the statement was coercive." *Jenkins v. United States*, 380 U.S. 445, 446 (1965).

### 2. The Facts

On the second day of deliberations, Petitioner's jury informed the trial court that it was hopelessly deadlocked on the first and second counts, which were open murder and assault with intent to commit murder. The trial court responded by reading the following instruction:

> Now, you have returned from deliberations indicating that you believe you cannot reach a verdict. I am going to ask you to please return to the jury room and resume your deliberations in the hope that after further discussion, you will be able to reach a verdict.
>
> As you deliberate, please keep in mind the guidelines I gave you earlier. Remember, it is your duty to consult with your fellow jurors and try to reach agreement if you can do so without violating your own judgment. To return a verdict, you must all agree and the verdict must represent the judgment of each of you.
>
> As you deliberate, you should carefully and seriously consider the views of your fellow jurors. Talk things over in a spirit of fairness and frankness. It's natural there will be differences of opinion. You should each not only express your opinion but also give the facts and the reasons on which you base it. By reasoning the matter out, jurors can often reach agreement.
>
> And when you continue your deliberations, do not hesitate to rethink your own views and change your opinion if you decide it was wrong. However, none of you should give up your honest beliefs about the weight or effect of the evidence only because of what your fellow jurors think or only for the sake of reaching agreement.
>
> So once again, ladies and gentlemen, this was a long trial, we were in trial all week and you've got plenty of time. Take your time. We are going to break

>now for 15 -- let you have a 15-minute break and then you will return to the
>courtroom, to the jury room and you will deliberate for as long as necessary for
>you to reach agreement.

(Tr. at 986-87.)[2]

On the third day of deliberations, the jurors requested to have some testimony re-read to them. Later that day, they sent the trial court another note stating that they were hopelessly deadlocked on the first two counts. The trial court sent the jurors to lunch and informed them that they would resume their deliberations when they returned. The jury subsequently requested to have additional testimony re-read to them, and on the fourth day of deliberations, they reached a verdict.

### 3. Analysis

The supplemental instructions as a whole were not coercive. The instructions provided scheduling information and stressed the jurors' need to continue their deliberations. The instructions were based on the standard Michigan criminal jury instruction on deadlocked juries, *see* CJI2d 3.12, and they were consistent with the *Allen* instruction, which encourages jurors to resume deliberations, to be candid with each other, and to respect their fellow jurors' opinions.

The comment, "You will deliberate for as long as necessary for you to reach agreement," may have been ill advised. However, the trial court also stated that the jurors should try to reach agreement if they could do so without violating their own judgment. The court further stated that the verdict must represent the judgment of each juror and that none of the jurors should give up an honest belief about the weight or effect of the evidence for the sake of reaching an agreement. Had the trial court omitted these remarks, the Court would be more inclined to find

---

[2] The transcript of trial consists of several volumes consecutively paginated.

7

that the supplemental instructions were coercive.

It is at least reasonable to conclude that there was no jury coercion here. Thus "the state court's determination to that effect must stand," *Early v. Packer*, 537 U.S. 3, 11 (2002), and Petitioner is not entitled to relief on the basis of his first claim.

### B. The Trial Court's Refusal to Re-Read Testimony and Defense Counsel's Failure to Object

Petitioner alleges next that the trial court erroneously denied the jury's request to re-read the medical examiner's testimony and the parties' stipulation regarding the report submitted by the surgeon who operated on Officer Spruiel before his death. Petitioner further alleges that his trial attorney should have objected to the trial court's refusal to re-read those items.

The trial court concluded on review of this claim that it did not abuse its discretion in refusing to re-read testimony, because both the prosecutor and defense counsel stated that the information was not admitted in evidence. As for the claim about defense counsel, the trial court stated that Petitioner had failed to rebut the presumption of effective assistance of counsel.

#### 1. Legal Framework

The claim about the trial court's refusal to re-read testimony and the parties' stipulation has no merit because Petitioner had no constitutional right to a re-reading of testimony. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 477 (6th Cir. Aug. 21, 2006) (unpublished). The decision whether to read back testimony or to provide the jury with a transcript of testimony generally is discretionary with the trial court and is not based on constitutional principles. *See id*.

To prevail on his ineffective-assistance-of-counsel claim, Petitioner must show that the state court's decision on that claim was contrary to, or an unreasonable application of, *Strickland*

*v. Washington,* 466 U.S. 668 (1984). The Supreme Court stated in *Strickland* that an attorney is ineffective if the attorney's "performance was deficient" and "the deficient performance prejudiced the defense." *Id.* at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

### 2. Application

At issue here is the following note from the jurors: "We request [the] medical examiner's testimony as to Officer Spruiel's wounds and their location. Also [we would] like the surgeon's report on Spruiel's wounds." The trial court did not respond immediately to the note. Instead, it adjourned trial for the day. On the following day, the trial court informed the jurors that the requested items were not admitted in evidence and that the jurors should rely on their collective memories.[3]

#### a. The Medical Examiner's Testimony

---

[3] The trial court's comments are not part of the record before the Court because Respondent did not file the transcript for the last day of trial (May 18, 1994), when the trial court made the comments. Petitioner, however, quoted the trial court's ruling in his pleading, and Respondent does not dispute the accuracy of the quotation. Consequently, the Court accepts Petitioner's quotation as accurate.

9

Petitioner alleges that the medical examiner's testimony and the parties' stipulation were important to the jury's verdict, because a critical issue was whether Officer Spruiel was shot in the back. Although this may be true, the medical examiner's testimony would not have supported the defense theory. The medical examiner testified that he observed two injuries, which he thought were gunshot wounds, and that one gunshot wound was visible in the middle of the officer's back, left of the spine. The other gunshot wound was visible on the officer's left hip. The medical examiner opined that the cause of death was complications from two gunshot wounds *of the back*. (Tr. at 132-35, 138, and 141) (emphasis added). This testimony would not have benefitted Petitioner, because it supported the prosecutor's theory that Officer Spruiel was shot in the back. Thus, defense counsel was not ineffective for failing to insist that the trial court re-read the medical examiner's testimony.

### b. The Surgeon's Report

The surgeon's report apparently stated that one bullet entered Officer Spruiel's right side under the armpit and went into his chest and abdomen and that a second bullet entered Spruiel's left flank. (Tr., at 859-60 and 914-15.) Whether this means that the first bullet entered Officer Spruiel from the front is unclear. The report could be interpreted to mean that the bullet entered Officer Spruiel from the back under the armpit and traveled from back to front into his chest and abdomen. This would be consistent with the medical examiner's testimony that the bullet entered Spruiel from the back and exited his chest. (Tr. at 141-42.)

Officer Counts testified that Officer Spruiel had said he was shot in the back. Counts also testified that the first shots came from the Camaro where Petitioner was standing with a short-barreled rifle in his hands. Another witness, Gregory Mac Donald, who was Petitioner's

10

friend and co-worker, testified that the police officer raised his gun and pointed at Petitioner *after* some gunshots were fired from the vicinity of Petitioner's car. Mr. Mac Donald also admitted that he had told the police in a truthful pretrial statement that Petitioner fired first.

There is not a reasonable probability that the result of the trial would have been different if defense counsel had objected to the trial court's failure to re-read the parties' stipulation concerning the surgeon's report. Therefore, Petitioner has not demonstrated that his attorney's performance prejudiced the defense. The trial court's rejection of Petitioner's ineffectiveness claim was not contrary to, or an unreasonable application of, *Strickland*.

**C. The Prosecutor**

Petitioner alleges that the prosecutor improperly cross-examined him about his girlfriend's arrest and made a comment that was not supported by the evidence. The trial court denied relief on this issue on the grounds that the prosecutor's questions and remarks did not result in manifest injustice and the evidence against Petitioner was overwhelming.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004), *cert.* denied, 544 U.S. 921 (2005). To prevail on his prosecutorial-misconduct claim, Petitioner must demonstrate that the prosecutor's conduct violated a specific constitutional right or infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). It is not enough to show that the prosecutor's conduct or remarks were undesirable or even universally condemned. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). On habeas review, the complained-of conduct must be both improper and flagrant, *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006), *cert. denied*, __ U.S. __, 127 S. Ct. 1376 (2007), and "'so

11

egregious as to render the entire trial fundamentally unfair.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)).

### 1. Stating that Petitioner was a Vigilante and Spruiel was Shot in the Back

Petitioner alleges that the prosecutor made inaccurate and improper statements when he referred to Petitioner as a vigilante and claimed that Officer Spruiel was shot in the back. (Tr. at 113, 115, 922, and 936). A prosecutor may not misrepresent facts in evidence, *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000), nor "bring to the attention of the jury any 'purported facts that are not in evidence and are prejudicial.'" *Byrd v. Collins,* 209 F.3d 486, 535 (6th Cir. 2000) (quoting *United States v. Wiedyk*, 71 F.3d 602, 610 (6th Cir. 1995)).

Use of the term "vigilante" was not fundamentally unfair, given Petitioner's testimony that he went home to get a rifle because he thought his cousin's life was being threatened by the police officers. The comment that Officer Spruiel was shot in the back was supported by the evidence. As explained above, the medical examiner opined that one bullet entered Officer Spruiel's back. The Court concludes that the prosecutor's comments were not inaccurate or improper.

### 2. The Question about Petitioner's Girlfriend

On cross-examination of Petitioner, the prosecutor asked whether Petitioner's girlfriend, Gwendolyn Wallace, had been convicted of carrying a concealed weapon. Defense counsel immediately objected to the question, and trial court sustained the objection. (Tr. at 909-13.) Petitioner did not answer the question, and the prosecutor resuming his questioning of Petitioner by merely asking whether Petitioner had a grudge against the police.

Even assuming that the disputed question was improper, the trial court subsequently

cautioned the jurors to disregard any comments or questions regarding the girlfriend's possible arrest or conviction and not to consider the information in deciding Petitioner's case. (*Id.* at 974.) The cautionary jury instruction cured any error resulting from the question.

### 3. Conclusion on Petitioner's Prosecutorial Misconduct Claim

The prosecutor's conduct was either proper or it did not infect the trial with such unfairness as to make the resulting conviction a denial of due process. Therefore, the trial court's conclusion -- that no manifest injustice resulted from the prosecutor's questions and remarks -- was not contrary to, or an unreasonable application of, Supreme Court precedent.

### D. Appellate Counsel

Petitioner's final claim alleges that his first appellate attorney was ineffective for failing to file a timely appellate brief. Petitioner raised this claim in his motion for relief from judgment and in appeals from the trial court's decision. The trial court did not explicitly address the claim about appellate counsel. However, by adjudicating the merits of Petitioner's other claims, the trial court implicitly found that appellate counsel's performance was deficient and "cause" for Petitioner's failure to raise his other claims in the appeal of right.

The Supreme Court has held that defendants in criminal cases possess a constitutional right to effective assistance of counsel in their first appeal of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). The test for ineffective assistance has two components: "First, the defendant must show that counsel's performance was deficient . . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. This standard is used to evaluate appellate counsel's performance, as well as, trial counsel's performance. *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004).

> [T]he complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice because "the adversary process itself" has been rendered "presumptively unreliable." The even more serious denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, similarly demands a presumption of prejudice. Put simply, [courts] cannot accord any "'presumption of reliability,'" to judicial proceedings that never took place.

*Roe v. Flores-Ortega,* 528 U.S. 470, 483 (2000) (internal citations omitted). In other words, "when counsel's constitutionally deficient performance deprived a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id*. at 484. Prejudice is presumed, "with no further showing from the defendant of the merits of his underlying claims when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent." *Id*.

### 1. Deficient Performance

Petitioner was deprived of his appeal of right by his first appellate attorney's failure to file a timely appellate brief. The "attorney's failure or refusal to abide by established time deadlines in handling [Petitioner's] appeal [wa]s conduct falling below the minimal standards of competency that federal case law has imposed upon counsel to satisfy constitutional safeguards." *White v. Schotten*, 201 F.3d 743, 752 (6th Cir. 2000), *overruled on other grounds by Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005), *cert. denied*, __ U.S. __, 126 S. Ct. 1880 (2006); *see also Deitz v. Money*, 391 F.3d 804, 810 (6th Cir. 2004) (stating that "the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a per se violation of the Sixth Amendment"). Thus, Petitioner has satisfied the first prong of the *Strickland* test. His appellate attorney's performance was deficient.

### 2. Prejudice

The remaining question is whether appellate counsel's deficient performance prejudiced the appeal. When determining the answer to this question, it is important to understand that, in Michigan, a defendant may challenge a state court conviction at all levels of state court review in collateral proceedings. The procedure on collateral review is to file a motion for relief from judgment in the trial court. *See* Mich. Ct. R. 6.502. The state court may grant relief if the defendant demonstrates "good cause for failure to raise such grounds on appeal" and "actual prejudice from the alleged irregularities that support the claim for relief." Mich. Ct. R. 6.508(D)(3). Relief also may granted where "the irregularity was so offensive that the conviction should not be allowed to stand regardless of its effect on the outcome of the case." Mich. Ct. R. 6.508(D)(3)(b)(iii). If the trial court denies the motion for relief from judgment, the defendant may apply for leave to appeal in the Michigan Court of Appeals, Mich. Ct. R. 6.509(A), and in the Michigan Supreme Court, Mich. Ct. R. 7.301(A)(2) and 7.302.

Petitioner presented his claims to the trial court in a motion for relief from judgment, which the trial court adjudicated on the merits. Petitioner also raised his claims in the Michigan Court of Appeals, which denied his appellate application "for lack of merit in the grounds presented." This was a merits determination. *Abela v. Martin*, 380 F.3d 915, 923 (6th Cir. 2004). The Michigan Supreme Court likewise was given an opportunity to review Petitioner's claims. Thus, Petitioner was not precluded from raising his claims in state court.

Furthermore, the three-tiered review of Petitioner's claims in state collateral proceedings was an adequate substitute for Petitioner's direct appeal. *Bair v. Phillips*, 106 F. Supp. 2d 934,

943 (E.D. Mich. 2000) (Duggan, J.). "Michigan's unique appellate procedures were sufficient to provide a proceeding that was not 'presumptively unreliable or entirely nonexistent,' as is required to create a presumption of prejudice according to the Supreme Court." *Walker v. McKee*, 366 F. Supp. 2d 544, 549 (E.D. Mich. 2005) (Gadola, J.); *but see Benoit v. Bock*, 237 F. Supp.2d 804, 812 (E.D. Mich 2003) (concluding that "[t]he petitioner's constitutional right to the assistance of counsel on his direct appeal was violated when his attorney abandoned the petitioner's appeal of right . . . ."). Petitioner's case is distinguishable from *Benoit* in that the trial court offered a reasoned judgment on the merits of Petitioner's claims.

To summarize, appellate review was not entirely nonexistent, and Petitioner was not deprived of counsel on state collateral review. He was represented by an attorney in the trial court and on appeal from the trial court's decision.. Therefore, prejudice may not be presumed. And because Petitioner has not shown actual prejudice from the denial of his appeal of right, he has no right to relief on the basis of his claim about appellate counsel.

## IV. Conclusion

The state court's resolution of Petitioner's claims did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, the Petition for a Writ of Habeas Corpus is DENIED.

Dated: January 3, 2008

                                       S/George Caram Steeh

GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 3, 2008, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk